NOT FOR PUBLICATION                                             [81]

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TIMOTHY L. BOOTH, | Civil Action No. 02-6752 (FLW) |
| Plaintiff, | OPINION |
| v. |  |
| DEPUTY LORENO, *et al.*, |  |
| Defendants. |  |

**WOLFSON, District Judge**

Presently before the Court is a motion by defendants Deputy Superintendent Michael Lorenzo[1], Deputy Superintendent David DiGuglielmo, Deputy Superintendent Manuel Arroyo, Captain Guy Smith, Captain Thomas Dohman, Lieutenant Michael Barefield, Corrections Officers Thomas Wright, David Kopinski, and Danette Pressley, Grievance Coordinator Leslie Hatcher and Unit Manager Anthony Kovalchik (collectively, the "Commonwealth Defendants"), seeking Summary Judgment pursuant to Fed.R.Civ.P. 56, on the retaliation claims of Plaintiff Timothy L. Booth, pro se.[2] Mr. Booth (hereinafter "Plaintiff") alleges that while incarcerated at the State Correctional Institution at Graterford, Pennsylvania, ("Graterford") the Commonwealth Defendants and Superintendent Donald T. Vaughn[3] placed him in administrative custody for a

---

[1]     This case has been incorrectly docketed as "Loreno".

[2]     Plaintiff's claims arise out of his alleged mistreatment while he was incarcerated at State Correctional Institution at Graterford in June 2002. Plaintiff has since been released from prison. The Court notes that this case was originally pending in the Eastern District of Pennsylvania and was transferred to this Court on April 7, 2006 by Order of the Third Circuit.

[3]     The Hon. Stewart Dalzell, U.S.D.J., Eastern District of Pennsylvania, entered summary judgment in favor of Superintendent Vaughn on December 20, 2005.

period of six days and denied him clean clothing and personal hygiene items in retaliation for his having filed other lawsuits against corrections officials. In addition to challenging Plaintiff's specific allegations as to the retaliation claim, the Commonwealth Defendants assert as an affirmative defense that Plaintiff has failed to comply with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which requires an inmate to exhaust completely all administrative remedies before seeking judicial review of alleged constitutional violations. For the reasons that follow, the Commonwealth Defendants' Motion for Summary Judgment is granted in part and denied in part.

## I. BACKGROUND

This case arises from Plaintiff's alleged mistreatment during his incarceration in Graterford. In June of 2002, while housed on D-Block, a general population block, Plaintiff was involved in an altercation with another inmate, Fred Singleton. The altercation stemmed from a dispute regarding showering rights between Muslim and homosexual inmates on D-Block. Booth Dep., June 6, 2005, at 9-11 ("Booth I Dep."). According to Plaintiff, Singleton advised Lt. Michael Doyle that Plaintiff had assaulted him. Id. at 9, 17; Declaration of Lt. Doyle ("Doyle Decl."), ¶¶ 3-7. Lt. Doyle reported Singleton's allegations to Lt. Michael Barefield. Doyle Decl., ¶ 7. Ultimately, both Singleton and Booth were placed in administrative custody status. Doyle Decl., ¶¶ 7-10; see also Form DC-141, Nos. 381914 (Singleton) and 381915 (Booth). Administrative custody status refers to a "status of confinement for non-disciplinary reasons which provides closer supervision, control, and protection than is provided for in general population." Def. Exhibit F, DC-ADM 802, § IV.A. Plaintiff and Singleton remained in administrative custody status for a period of six days, until Singleton advised prison officials on

2

June 25, 2002, that he no longer felt that Plaintiff posed a danger and wanted to be released. Doyle Decl., ¶¶ 11-12. Thereafter, both Plaintiff and Singleton were released back into the general population. Plaintiff challenges as unconstitutional his placement in administrative custody status and the alleged mistreatment he received during the six-day period he remained in administrative custody.[4]

The lengthy and tortuous procedural history of this case is more fully set forth in previous Opinions and Orders of the United States District Court for the Eastern District of Pennsylvania and the Third Circuit, issued on December 28, 2004, December 20, 2005, and February 3, 2006. See Booth v. Loreno, No. 03-3227 (3d Cir. Dec. 28, 2004); Booth v. Loreno, No. 02-6752 (E.D.Pa. Dec. 20, 2005); Booth v. Loreno, No. 02-6752 (E.D.Pa. Feb. 3, 2006). On October 16, 2002, Plaintiff filed a Complaint in the Eastern District of Pennsylvania alleging violations of his constitutional rights under the First and Eighth Amendments by prison officials during his six-day stay in administrative custody status. See Plaintiff's Complaint ("Compl."). On February 28, 2003, Plaintiff moved for default judgment. The Commonwealth Defendants and Superintendent Vaughn moved to dismiss Plaintiff's Complaint on March 14, 2003, after receiving an extension of time to file from the Hon. Anita B. Brody, U.S.D.J., Eastern District of Pennsylvania. Thereafter, Judge Brody denied Plaintiff's motion for default judgment and dismissed Plaintiff's Complaint. On December 28, 2004, the Third Circuit affirmed Judge Brody's ruling by upholding the dismissal of Plaintiff's Eighth Amendment claim and the denial of Plaintiff's

---

[4] Plaintiff appears to suggest in his opposition to the instant motion that he is not challenging his placement in administrative custody but, rather, the mistreatment he received while in administrative custody, see Plaintiff's Opp. Br. at 2, however, viewing collectively Plaintiff's Complaint, the statements and arguments raised in his opposition brief, along with the Exhibits referenced therein, Plaintiff arguably challenges both the placement and the alleged mistreatment.

3

motion for default judgment, however, the Third Circuit vacated the dismissal of Plaintiff's First Amendment claim, finding that Plaintiff's Complaint had been dismissed without consideration of Plaintiff's retaliation claim. Plaintiff's First Amendment retaliation claim is based upon Plaintiff's placement in administrative custody status and his assertion that while he was held in administrative custody from June 19, 2002 through June 25, 2002, the defendants deprived him of clothing, personal hygiene items, and daily exercise in retaliation for his having filed suit against Superintendent Vaughn and other prison officials. Compl. at § V; Booth Dep., July 11, 2006 at T18:20-23 ("Booth II Dep.").

On June 20, 2005, Defendant Superintendent Vaughn moved for summary judgment on Plaintiff's retaliation claim. Prior to decision on Vaughn's motion, Judge Brody recused herself and the case was transferred to the Hon. Stewart Dalzell, U.S.D.J., Eastern District of Pennsylvania. By Order dated December 20, 2005, Judge Dalzell granted summary judgment in favor of Defendant Vaughn and separately ordered the Commonwealth Defendants to file an answer to the remaining Complaint. Plaintiff thereafter sought reconsideration of Judge Dalzell's dismissal of the retaliation claim against Defendant Vaughn, which Judge Dalzell denied by Order dated February 3, 2006. Judge Dalzell similarly denied Plaintiff's motion for default judgment against the Commonwealth Defendants, finding that they had answered by the date set forth in the court's prior order. Thereafter, Judge Dalzell recused himself and the case was transferred to this Court from the Eastern District of Pennsylvania.

On September 26, 2006, the Commonwealth Defendants moved before this Court for summary judgment as to Plaintiff's remaining claim against them – the First Amendment

4

retaliation claim. Plaintiff filed opposition to the motion on October 11, 2006 and the Commonwealth Defendants have not filed a reply.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof. Anderson, supra, 477 U.S. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In evaluating the evidence, the Court must "'view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] paty.'" Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002)(quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)). Although pro se complaints are entitled to liberal construction, Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed. 652 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992), the Plaintiff must still set forth facts sufficient to survive summary judgment. Shabazz v. Odum, 591

F.Supp. 1513 (M.D.Pa. 1984); see also Kaiser v. Bailey, 2003 WL 2150039 at *3 (D.N.J. July 1, 2003).

### B. Plaintiff's Retaliation Claims

In order to establish a First Amendment retaliation claim, a prisoner must demonstrate that "1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002)(citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). "Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" Id.

In this case, the Commonwealth Defendants do not dispute the first two elements of Plaintiff's retaliation claim[5] – the protected activity and adverse action – rather, they argue that Plaintiff cannot show that the exercise of his constitutional right was a substantial or motivating factor in the decision to place him in administrative custody status. In short, the Commonwealth Defendants contend that Plaintiff cannot show that any of them had knowledge of any protected activity and, moreover, with the exception of Barefield and Smith, that they had any personal involvement in his placement in administrative custody. Moreover, they contend that even if Plaintiff were able to establish a causal link sufficient to satisfy the third element, Plaintiff's

---

[5] The Commonwealth Defendants do not concede that Plaintiff can satisfy the first two elements, rather, they assume "arguendo, without conceding" that even if Plaintiff can satisfy those elements, he still cannot show the requisite causal connection.

6

claim would still fail because they would have made the same decision for reasons reasonably related to legitimate penological interests.

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)(citations omitted). As the Third Circuit has recently cautioned "[a] court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled form taking action that he deemed appropriate and, in fact, was appropriate . . . . Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct." Id. at 267-68.

Plaintiff does not appear to allege that the timing of the retaliatory action supports an inference that his protected activity led to his placement in administrative custody, as he points to multiple suits he filed against prison officials, including the one filed against Superintendent Vaughn. Booth II, T18:20-23. Rather, Plaintiff seems to suggest that causation can be inferred from the record as a whole. The problem with Plaintiff's attempt to establish causation lies in the fact that he supports his allegations with mere speculation. The evidence is clear that the only two defendants that had any involvement in, or contemporaneous awareness of, Plaintiff's

7

placement in administrative custody were Defendants Smith and Barefield and both deny having any knowledge whatsoever of the suits filed by Plaintiff against prison officials prior to the institution of the instant litigation. See Barefield Decl. at ¶ 7; Smith Decl. at ¶ 6. It is clear that to find the necessary causal link, this Court must conclude that the Defendants responsible for Plaintiff's placement in administrative custody had knowledge of the protected activity. Indeed, a party must be aware of conduct before that conduct can be found to have induced the party's action. Here, where Plaintiff does not refute the fact that Barefield and Smith were responsible for his placement in administrative custody or their denials that they had any knowledge of his filing suits against prison officials with anything other than mere speculation, the requisite causal link is not established. For this reason, I find that Plaintiff has failed to establish a *prima facie* case of retaliation against the Commonwealth Defendants in connection with his placement in administrative custody status in June 2002.

Moreover, Court finds that the Commonwealth Defendants presented clear and unrefuted evidence that Plaintiff was placed in administrative custody as a direct result of his altercation with inmate Singleton. See Barefield Decl., Ex. H; Smith Decl., Ex. I. While Plaintiff denies that he struck Singleton, he concedes that an altercation occurred. Booth I at 8-11. Plaintiff has simply failed to set forth facts and evidence, as required by the summary judgment standard, to contradict the evidence presented by the Commonwealth Defendants that Plaintiff was placed in administrative custody status for legitimate penological reasons and thus cannot overcome Defendants' motion for summary judgment on these grounds. Accordingly, summary judgment will be granted to all Commonwealth Defendants on Plaintiff's claim of retaliation which is based on his placement in administrative custody status.

To the extent that Plaintiff bases the retaliation claim on the alleged deprivation of clothing, personal hygiene items and daily exercise by the Commonwealth Defendants during his six-day stay in administrative custody, the Court notes that the Third Circuit has already affirmed the finding that such denial does not constitute an Eighth Amendment violation. See Booth v. Loreno, No. 03-3227 (3d Cir. Dec. 28, 2004).[6] Nevertheless, Plaintiff separately alleges both in his Complaint and in his opposition to the instant motion for summary judgment that the Commonwealth Defendants retaliated against him by denying his "basic needs" during his stay in administrative custody.[7] The Court must therefore determine whether the conduct alleged by Plaintiff is sufficient to sustain his retaliation claim.[8]

As previously discussed, Plaintiff's claims of retaliation based on his filing of suits against prison officials clearly demonstrates his engagement in constitutionally protected activity. Additionally, this Court finds that the deprivations alleged by Plaintiff while in administrative custody, which were clearly contrary to established policy, qualify as adverse action sufficient to sustain a *prima facie* retaliation claim. See Jacobs v. Beard, 172 Fed. Appx. 452, 455 (3d Cir.

---

[6] Although it is not entirely clear, Plaintiff appears to rely on the alleged deprivation of personal items to raise arguments under the Eighth Amendment as well as his retaliation claim in his brief in opposition to the instant motion.

[7] The conditions that apply while an inmate is housed in administrative custody status are set forth in Consolidated Inmate Grievance Review System, policy DC-ADM 802. See Defendants' Ex. F. While an inmate's access to personal property is restricted while in administrative custody status, the governing policy clearly provides that an inmate shall have access to "basic issue toilet articles" and exercise "one (1) hour per day, five (5) days per week." Id.

[8] Parenthetically, the Court notes that in seeking summary judgment as to Plaintiff's retaliation claim, the Commonwealth Defendants fail to even address Plaintiff's claims of retaliation based upon his alleged mistreatment while in administrative custody, instead limiting their analysis to the decision to place him in administrative custody.

2006) ("unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury.")(citations omitted). In order for Plaintiff to establish the causal connection between the protected activity and the adverse action, however, Plaintiff must show that Defendants actually knew about the protected activity. All eleven Commonwealth Defendants deny having any knowledge of Plaintiff's protected constitutional activity, i.e., his filing of suits against prison officials, prior to the institution of the instant action. See Defendants' Ex. H, Ex. I, Ex. L, Ex. M, Ex. N, Ex. O, Ex. P, Ex. Q, Ex. R, Ex. S, Ex. T. As previously noted, Plaintiff's mere speculation that various Defendants were indeed aware of the protected conduct is insufficient to establish the retaliatory motive necessary to overcome the motion for summary judgment.

Wright, Kopinsky, Pressley and Kovalchik are the only Defendants for whom Plaintiff offers anything other than his general speculation that the Defendants knew of his protected conduct. With respect to Wright, Kopinsky and Pressley, Plaintiff offers the certification of another inmate, Phillip Wesley Miller, who declares that on June 25, 2002, " they told [him] that they weren't going to give Mr. Booth anything to live by while [in administrative custody] because Mr. Booth like [sic] filing grievance and civil suit [sic] against their friend and supervisor." Plaintiff's Ex. N1. These statements would constitute admissions by the three defendants and would therefore support Plaintiff's *prima facie* case of retaliation and, in the absence of any showing by the Commonwealth Defendants here that the deprivations alleged by Plaintiff were reasonably related to penological interest, would be sufficient to preclude the grant of summary judgment. Nonetheless, the Court is constrained to note that while unsworn declarations may substitute for sworn affidavits under federal law, the Miller certification

submitted by Plaintiff is a copy, and handwritten in what plainly appears to be Plaintiff's writing; it does not contain an original signature of the declarant, but merely a photocopy of what purports to be Mr. Miller's signature. On this record, the Court will deny the motion for summary judgment as to Wright, Kopinsky and Pressley without prejudice, but will direct Plaintiff to immediately provide the Court with Miller's original certification. Such submission shall be made within ten (10) days.

With regard to defendant Kovalchik, Plaintiff testified during his deposition that Kovalchik made snide comments to him regarding his "legal work" at a time which appears to be prior to his placement in administrative custody. Booth II, T29:14-24. Plaintiff's statements alone regarding Kovalchik's purported knowledge of Plaintiff's suits against prison officials is not sufficient to establish the causal link. First, the Court notes the absence of any evidence of temporal proximity or pattern of antagonism in connection with Kovalchik's alleged statements. However, even if this Court were to accept Plaintiff's testimony regarding Kovalchik's prior knowledge of his legal suits against prison officials, the "evidence gleaned from the record as a whole" still would not establish the necessary causal link. There is insufficient evidence in the record that Kovalchik had anything whatsoever to do with the conditions imposed on Plaintiff during his six-day stay in administrative custody. The only evidence in the record linking Kovalchik to the alleged mistreatment is found in Exhibit L to Plaintiff's opposition brief, which

is entitled "Affidavit of Further Retaliatory Punishment"[9] in the captioned matter "Timothy Booth vs. Pence, et al", Docket No. 01-4296, wherein Plaintiff states the following:

> I've asked Mr. Kovalchik for my right and to stop the abuse and was told no way with a laugh. I asked if I could have an hour excrise for medical reason and pointed out that Mr. Singleton was getting a hour every day [sic]. He said I brought this on myself by filing paper work against the prison officials and he wasn't going to help me at all. Retaliation for filing Booth v. Pence and Booth v. Vaughn."

Plaintiff's Ex. L2. The Court finds the foregoing inadequate to prove the requisite causal connection necessary to establish Plaintiff's *prima facie* case of retaliation. At best, Plaintiff's statement is further evidence that Kovalchik was aware of the protected activity. There is simply no evidence in the record that Kovalchik had any involvement in Plaintiff's alleged mistreatment during his six-day stay in administrative custody.

Accordingly, the Commonwealth Defendants' Motion for Summary Judgment is granted as to Defendants Lorenzo, DiGuglielmo, Arroyo, Smith, Dohman, Barefield, Hatcher and Kovalchik and denied without prejudice as to Defendants Wright, Kopinsky, and Pressley, subject to Plaintiff's submission of Mr. Miller's original certification.

### C. Exhaustion of Administrative Remedies

Alternatively, the Commonwealth Defendants contend that dismissal of Plaintiff's claims is appropriate based upon his failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Since all Defendants other than

---

[9] Despite the fact that Plaintiff has labeled the foregoing as an "Affidavit", it is not sworn and does not meet the requirements of Fed.R.Civ.P. 56(e); nevertheless it arguably fulfills the requirements for unsworn statements under 28 U.S.C. § 1746 in light of Plaintiff's notation that it is "signed under the penalty for perjury". See U.S. v. Branella, 972 F.Supp. 294, (D.N.J. 1997)("Critical in the statutory prerequisite is the phrase 'under penalty of perjury,' as the purpose of 28 U.S.C. § 1746 is 'to set the stage for a federal prosecution in the event of falsity.'")(citations omitted).

Wright, Kopinsky, and Pressley have been dismissed on the merits, the Court's exhaustion analysis is undertaken only as to these Defendants. The PLRA states in relevant part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the PLRA in 1996, "largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Alexander v. Hawk, 159 F.3d 1321, 1326 n.11 (6th Cir.1999) (citing 141 Cong. Rec. H14078-02, H14105 (daily ed. Dec. 6, 1995)). Section 1997e(a) was designed to reduce the quantity and improve the quality of prisoner lawsuits and afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit. Jones v. Bock, 127 S.Ct. 910, 914-15, 166 L.Ed.2d 798 (2007) (citing Woodford v. Ngo, 126 S.Ct. 2378, 2388, 165 L.Ed2d 368 (2006)). Additionally, internal review filters out frivolous claims and facilitates adjudication of those claims that are ultimately brought to federal court by providing an administrative record outlining the controversy. Woodford, 126 S.Ct. at 2388.

The PLRA requires an inmate to exhaust all administrative remedies prior to bringing a federal action challenging prison conditions, whether or not such remedies provide the inmate with the relief the inmate says he or she desires in the federal action. Nyhuis, supra, 204 F.3d at 71. The PLRA requires "proper exhaustion", which compels compliance with the system's critical procedural rules. Woodford, supra, 126 S.Ct. at 2388. Failure to exhaust administrative remedies is an affirmative defense, and the defendant bears the burden of pleading and proof. See Jones v. Bock, supra, 127 S.Ct. at 921 ("[F]ailure to exhaust is an affirmative defense under the

13

PLRA, and . . . inmates are not required to specifically plead or demonstrate exhaustion in their complaints."); see also Ray v. Kortes, 285 F.3d 287, 295 (3d Cir. 2002). The exhaustion requirements of the PLRA apply to retaliation claims. See Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003)(holding that "1997e(a) requires a prisoner to exhaust his administrative remedies when alleging 'particular episodes' of misconduct - which would include an act of retaliation")(citing Porter v. Nussle, 534 U.S. 516, 532 (2002)).

Here, the Commonwealth Defendants point to the Consolidated Inmate Grievance Review System, policy DC-ADM 804, arguing that Plaintiff failed to properly and fully exhaust all available administrative remedies. It is undisputed that policy DC-ADM 804 requires initial grievances to be filed within fifteen (15) days of the event on which the grievance is based and that the written response thereto from the Grievance Officer be provided within ten (10) working days of receipt of the grievance. Following the issuance of this "Initial Review", an inmate may appeal the decision to the Facility Manager within five (5) days of receipt of the Initial Review decision. The Facility Manager must thereafter notify the inmate of his or her decision within ten (10) working days after receipt of the appeal. After receipt of the Facility Manager's decision, an inmate has seven (7) days within which to seek Final Review. Def. Exhibit U, DC-ADM 804, § VI.

In support of the Commonwealth Defendants' contention that Plaintiff has failed to exhaust administrative remedies, they cite the general requirements of policy DC-ADM 804 and merely point to "Exhibit J" of their appendix as proof that Plaintiff failed to comply with "the applicable procedural rules." Defendants' Br. at 23. However, Exhibit J is the official inmate grievance form that was filed by Plaintiff on June 23, 2002. Presumably, the Commonwealth

Defendants intended to cite to Exhibit K of their appendix which consists of a letter from Grievance Review Officer Tshanna C. Kyler, dated September 19, 2002, and a letter from Chief Grievance Coordinator Thomas L. James, dated October 3, 2002, which both referenced Grievance No. 27473. The September 19, 2002 letter notes that Plaintiff's request for appeal would be filed without action based upon Plaintiff's failure to comply with DC-ADM 804. Specifically, the letter cites Plaintiff's failure to include required documentation including the Initial Review, the Appeal to the Facility Manager, and the Facility Manager's decision. The October 3, 2002 letter again notes that Plaintiff failed to provide the required documentation relating to Plaintiff's appeal. Specifically, the letter indicates that Plaintiff failed to include the "Superintendent's response", presumably to the Initial Review, and dismisses Plaintiff's appeal on this basis.

Citing to Exhibits E through E7 of his appendix, Plaintiff refutes the Commonwealth Defendants' contention that he failed to exhaust his administrative remedies. Included among the Plaintiff's Exhibits is the June 23, 2002 official inmate grievance form cited by the Commonwealth Defendants[10], as well as a handwritten letter dated June 25, 2002 from Plaintiff to Superintendent Vaughn complaining of the alleged retaliatory conduct during his six days in administrative custody. The following notation appears in the top right corner of the handwritten letter: "Exhaustion 2nd Level." Also included among Plaintiff's exhibits are an August 13, 2002 letter from Clerk Typist II, Melanie Snyder, of the Secretary's Office of Inmate Grievances and Appeals, wherein Ms. Snyder acknowledges receipt of a letter from Plaintiff postmarked July 26,

---

[10] Unfortunately, neither of the inmate grievance forms included in the appendices of the parties, which are identical in substance, reference the particular Grievance Number.

15

2002, which included Plaintiff's appeal to the superintendent. Plaintiff's Ex. E5. However, Ms. Snyder notes that Final Review would not be granted because the Superintendent's office had no record of Plaintiff's appeal, nor had a response to Plaintiff's appeal been issued by the Superintendent. Curiously, the Grievance Number referenced in the August 13, 2002 letter is illegible, and the numbers that do appear do not correspond with Grievance No. 27473 referenced in the response letters included within the Commonwealth Defendants' Exhibits.[11] Plaintiff also includes a copy of what appears to be the September 19, 2002 letter from Grievance Review Officer Tshanna C. Kyler included in the Commonwealth Defendants' appendix, referencing Grievance No. 27473[12] but which is different in substance. Rather than noting that Plaintiff's appeal is incomplete, the last paragraph of the September 19, 2002 letter included in Plaintiff's Exhibits notes that "For the above-stated reasons, the responses provided by the Program Review Committee and the Superintendent are upheld in full. Your appeal must, therefore, be denied."

In light of the Commonwealth Defendants' failure to respond to the issues raised by Plaintiff with respect to exhaustion, the Court will deny the motion for summary judgment as to Defendants Wright, Kopinsky and Pressley without prejudice and direct the parties to appear before the Court for a hearing on the issue. At the hearing the parties should provide the Court with testimony regarding their respective proofs and are directed to provide the Court with all documentation related to any grievance filed by Plaintiff having to do with his placement in

---

[11] It appears from this Court's review of the record that Plaintiff may have filed multiple grievances in connection with his placement in administrative custody on June 19, 2002.

[12] Although the Grievance No. is not totally legible, it references the first two digits of Grievance No. 27473.

administrative custody on June 19, 2002 and his treatment therein.  The Court notes again that Defendants bear the burden of proof on this issue, and should be prepared to proceed on that basis.  Finally, to the extent that originals of any and all such documentation exist, they shall be made available to the Court at the hearing.

### III. CONCLUSION

For the reasons discussed herein, the Commonwealth Defendants' motion for summary judgment is granted as to Defendants Lorenzo, DiGuglielmo, Arroyo, Smith, Dohman, Barefield, Hatcher and Kovalchik and denied without prejudice as to Defendants Wright, Kopinsky, and Pressley.  An appropriate order will follow.


Dated: May 16, 2007                         /s/ Freda L. Wolfson
                                            Honorable Freda L. Wolfson
                                            United States District Judge

**NOT FOR PUBLICATION**                                           [81]

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY L. BOOTH, | Civil Action No. 02-6752 (FLW) |
| Plaintiff, | **ORDER** |
| v. | |
| DEPUTY LORENO, *et al.*, | |
| Defendants. | |

**WOLFSON, District Judge**

This matter having been opened to the Court by the Attorney General of the Commonwealth of Pennsylvania, Barry N. Kramer, Senior Deputy Attorney General, as counsel for Defendants Deputy Superintendent Michael Lorenzo, Deputy Superintendent David DiGuglielmo, Deputy Superintendent Manuel Arroyo, Captain Guy Smith, Captain Thomas Dohman, Lieutenant Michael Barefield, Corrections Officers Thomas Wright, David Kopinski, and Danette Pressley, Grievance Coordinator Leslie Hatcher and Unit Manager Anthony Kovalchik (collectively, the "Commonwealth Defendants"), seeking Summary Judgment pursuant to Fed.R.Civ.P. 56, on the retaliation claims of Plaintiff Timothy L. Booth, pro se; and written Opposition having been filed by Plaintiff, and the Court having considered the Motion pursuant to Fed. R. Civ. P. 78; and for the reasons stated in the Court's Opinion of this date, and for good cause shown:

**IT IS** on this 16th day of May, 2007, hereby

**ORDERED** that the Commonwealth Defendant's Motion for Summary Judgment is **GRANTED** as to Defendants Lorenzo, DiGuglielmo, Arroyo, Smith, Dohman, Barefield, Hatcher and Kovalchik and **DENIED** without prejudice as to Defendants Wright, Kopinsky, and Pressley.

                                                               /s/ Freda L. Wolfson
                                                                Honorable Freda L. Wolfson
                                                                United States District Judge